UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CASSANDRA SWAYZER-BRADLEIGH                                                                PLAINTIFF

v.                                                                      CIVIL ACTION NO. 3:14-CV-673-DW

CAROLYN W. COLVIN, Acting Commissioner of Social Security                 DEFENDANT

### MEMORANDUM OPINION

      Plaintiff Cassandra Swayzer-Bradleigh has filed a complaint pursuant to 42 U.S.C. §405(g) to obtain judicial review of a final decision of the Commissioner of Social Security that denied her application for disability insurance benefits (DIB). Swayzer-Bradleigh applied for DIB on July 6, 2011, alleging that she was disabled as of Dec. 8, 2010, due to degenerative disk disease of her cervical and lumbar spine, degenerative joint disease of the left ankle, residuals of breast cancer treatment and Fuch's dystrophy (Tr. 150, 197-208). The Commissioner denied Swayzer-Bradleigh's application on initial consideration (Tr. 101) and on reconsideration (Tr. 102). Swayzer-Bradleigh requested a hearing before an Administrative Law Judge (ALJ) (Tr. 123).

      ALJ William Zuber conducted a hearing in Louisville, Kentucky, on May 6, 2013 (Tr. 27-84). Swayzer-Bradleigh attended with her attorney, Joseph Elder, III (Tr. 27). Swayzer-Bradleigh and vocational expert (VE) Gail Franklin testified at the hearing (Tr. 32-77, 78-84). Following the conclusion of the hearing, ALJ Zuber entered a hearing decision on July 12, 2013, that found Swayzer-Bradleigh is not disabled for the purposes of the Social Security Act (Tr. 13-21).

      In his adverse decision, ALJ Zuber made the following findings:

1.      The claimant meets the insured status requirements of the Social Security Act through Dec. 31, 2015.

2. The claimant has not engaged in substantial gainful activity since Dec. 8, 2010, the alleged onset date (20 C.F.R. 404.1571, *et seq.*).

3. The claimant has the following severe impairments: Fuch's dystrophy, degenerative disk disease of the cervical and lumbar spine, degenerative joint disease of the left ankle and a history of breast surgery (20 C.F.R. 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) with only the occasional climbing of ramps and stairs, and occasional stooping, crouching, crawling and kneeling. The claimant cannot climb ladders, ropes and scaffolds and must have no exposure to dangerous machinery or unpredicted heights and wetness. The claimant can perform no more than frequent use of the hands and no more than frequent use of foot controls. The claimant would also have the option to sit/stand every 30-45 minutes. The claimant would be capable of no more than frequent fine visual acuity.

6. The claimant is capable of performing past relevant work as a survey worker/clerk, broadcaster, and telemarketer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from Dec. 8, 2010, through the date of this decision (20 C.F.R. 404.1520(f)).

Swayzer-Bradleigh sought review of the hearing decision by the Appeals Council (Tr. 8-9). The Appeals Council denied her request for review, finding no reason under the Rules to review ALJ Zuber's decision (Tr. 1-5). The present lawsuit followed.

**The Five-Step Sequential Evaluation Process.**

Disability is defined by law as being the inability to do substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See, 20 CFR §§ 404.1505, 416.905(a). To determine whether a claimant for DIB or SSI benefits satisfies such definition, a 5-step evaluation process has been developed. 20 CFR §§ 404.1520, 916.920(a). At step 1, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the Commissioner will find the claimant to be not disabled. See, 20 CFR §§ 404.1520(a)(4)(i), 416.920(a)(4)(ii), 416.971. *See, Dinkel v. Secretary*, 910 F2d, 315, 318 (6th Cir. 1990).

If the claimant is not working, then the Commissioner next must determine at step 2 of the evaluation process whether the claimant has a severe impairment or combination of severe impairments that significantly limit his or her ability to perform basic work activities. See 20 CFR §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the impairments of the claimant are determined by the Commissioner to be non-severe, in other words, so slight that they could not result in a finding of disability irrespective of a claimant's vocational factors, then the claimant will be determined to be not disabled at step 2. *See, Higgs v. Bowen*, 880 F.2d 960, 962 (6th Cir. 1988); *Mowery v. Heckler*, 771 F.2d 966, 971-72 (6th Cir. 1985).

If the claimant has a severe impairment or impairments, then the Commissioner at step 3 of the process will determine whether such impairments are sufficiently serious to satisfy the listing of impairments found in Appendix 1 of Subpart B of Part 404 of the federal regulations. 20 CFR §§ 404.1520(A)(4)(iii), 416.920(a)(4)(iii) The claimant will be determined to be automatically disabled without consideration of his or her age, education or work experience if the claimant's impairments are sufficiently severe to meet or equal the criteria of any impairment

listed in the Appendix.  *See*, *Lankford v. Sullivan*, 942 F.2d 301, 306 (6th Cir. 1991); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

When the severity of the claimant's impairments does not meet or equal the listings, then the Commissioner must determine at step 4 whether the claimant retains the residual functional capacity (RFC) given his or her impairments to permit a return to any of his or her past relevant work.  20 CFR §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  *See, Smith v. Secretary*, 893 F.2d 106, 109-110 (6th Cir. 1989).  A claimant who retains the residual functional capacity, despite his or her severe impairments, to perform past relevant work is not disabled. 20 CFR §§ 404.1560(b)(3), 416.960(b)(3)  The burden switches to the Commissioner at step 5 of the sequential evaluation process to establish that the claimant, who cannot return to his or her past relevant work, remains capable of performing alternative work in the national economy given his or her residual functional capacity, age, education and past relevant work experience.  See, 20 CFR §§ 404.1520(a)(4)(v), 404.1560( c ), 416.920(a)(4)(v), 416.960( c ); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Herr v. Commissioner*, 203 F.3d 388, 391 (6th Cir. 1999).  Collectively, the above disability evaluation analysis is commonly referred to as the "5-step sequential evaluation process."

**Standard of Review.**

Review of a decision of the Commissioner is governed by 42 U.S.C. § 405(g).  The statute, and case law that interprets it, require a reviewing court to affirm the findings of the Commissioner if they are supported by substantial evidence and the Commissioner has employed the appropriate legal standard.  *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997) ("This Court must affirm the Commissioner's conclusions absent a determination

that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.). Substantial evidence is defined by the Supreme Court to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). *See also, Lashley v. Sec'y of HHS*, 708 F.2d 1048, 1053 (6th Cir. 1983) (citing *Perales*). It is more than a mere scintilla of evidence or evidence that merely creates the suspicion of the existence of a fact, but must be enough evidence to justify a refusal to direct a verdict if the matter were tried to a jury. *Sias v. Sec'y of HHS*, 861 F.2d 475, 479 n. 1 (6th Cir. 1988).

The substantiality of the evidence is to be determined based upon a review of the record taken as a whole, not simply some evidence, but rather the entirety of the record to include those portions that detract from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Laskowski v. Apfel*, 100 F. Supp.2d 474, 482 (E.D. Mich. 2000). So long as the decision of the Commissioner is supported by substantial evidence, it must be upheld by the federal court even if the record might support a contrary conclusion. *Smith v. Sec'y of HHS*, 893 F.2d 106, 108 (6th Cir. 1989). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).

**Issues for Review.**

5

Plaintiff in her memorandum in support of her motion for summary judgment[1] claims three errors in ALJ Zuber's hearing decision. The first claimed error relates to the residual functional capacity determination made by ALJ Zuber in finding of fact no. 5 of his hearing decision (Tr. 16-20). In this finding, the ALJ determined that Swayzer-Bradleigh retains the residual functional capacity to perform a limited range of light work that requires, among other limitations, that she perform no more than frequent fine visual acuity (Tr. 16). Plaintiff maintains that this RFC finding is not supported by substantial evidence given that her loss of visual acuity due to Fuch's dystrophy, which has not improved contrary to the erroneous finding of the ALJ at p. 6 of his hearing decision (Tr. 18).

Second, the Plaintiff argues that finding of fact no. 6 of the hearing decision that she can return to her past relevant work as a broadcaster, telemarketer or survey worker, also is not supported by substantial evidence (Tr. 20-21). Plaintiff maintains that the visual limitations imposed upon her by her Fuch's dystrophy preclude her from performing the duties of all her past relevant work, contrary to the determination of the ALJ, who erred in finding that her Fuch's dystrophy had been surgically corrected.

Plaintiff maintains that her visual acuity, to the contrary, has actually deteriorated, as confirmed by the post-hearing evidence that she has entered into the record following the favorable ruling of the Magistrate Judge.[2] This evidence includes a patient examination record of the primary care eye clinic of the University of Louisville dated May 13, 2013,[3] and a patient record from Dr. Ali Haider of the Senior Health Services LLC dated Jan. 25, 2015.[4] Plaintiff maintains that the contents of these treatment records reveal that not only was her Fuch's

---

[1] DN 16, Mot. for Summary.Judgment.
[2] DN 15, Order.
[3] DN 12, Motion to Allow New Evidence, Ex. 1.
[4] DN 12, Ex. 2.

6

dystrophy not surgically corrected, as the ALJ incorrectly states, but rather she was noted by Dr. Haider to have decreased quality of visual acuity combined with glare and halos that she explained to the doctor made her unsure of her footing at night as recently as January of 2015.

These two treatment records in the Plaintiff's view underscore the third error in ALJ Zuber's hearing decision at p. 6 where at he states:

> As to the claimant's history [of] Fuch's dystrophy, which has led to eyelid surgery and alleged vision problems, the records actually show the claimant has recovered successfully from the surgical procedure. In addition, the record shows that her vision is 20/25 in the right eye and 20/30 in the left eye as of May 2013, which has remained stable. (Exhs 15F, 17F and 30F).

(Tr. 18).

Plaintiff insists that the above-quoted findings are clearly erroneous and are directly contrary to the record then before the ALJ, and to the more recent treatment notes of Dr. Haider, which show deterioration in visual acuity rather than stability. For all of these reasons, Swayzer-Bradleigh now asks that her case be remanded to the Commissioner pursuant to Sentence 6 of 42 U.S.C. §405(g) for further consideration in light of the recent additional evidence she submitted.

The Commissioner in her fact and law summary responds that substantial evidence does support the RFC determination of ALJ Zuber at finding of fact no. 5. The Commissioner notes in this respect that the Plaintiff's vision as of May 2013, was noted to be 20/25 on the right and 20/30 on the left. The Commissioner maintains that Plaintiff in her motion for summary judgment fails to address the visual acuity tests of record or to adequately explain her current claim that she has no fine visual acuity. In this final respect, the Commissioner notes that ALJ Zuber gave the Plaintiff's claims some credibility to the extent that he found she was capable of no more than frequent fine visual acuity, but the repeated measurements of her visual acuity do

not support her contention that she has *no* fine visual acuity, given that repeated visual acuity tests prior to the hearing decision did not demonstrate significant visual problems. (Tr. 359-80, 387, 469-74).

On this latter point, the Commissioner cites the eye examination results obtained in July of 2011, by Dr. Derr who noted that Swayzer-Bradleigh had normal eye function with no restrictions (Tr. 321). Likewise, the results obtained by consultative examiner Dr. Burns in November of 2011, also confirm the Plaintiff's normal vision, which Dr. Burns did not conclude prevented Plaintiff from performing work with a computer (Tr. 340). Because no physician or optometrist concluded that the Plaintiff has no fine visual acuity, the Commissioner concludes that ALJ Zuber's adverse hearing decision is amply supported by substantial evidence in this regard.

The Commissioner next turns to the challenged portion of ALJ Zuber's hearing decision at p. 6 where he discusses the Plaintiff's eyelid surgery (Tr. 18). The Commissioner finds two problems with the Plaintiff's argument that ALJ Zuber confused her surgery for her eyelid lesion with that for Fuch's dystrophy. First, the Commissioner points out that the ALJ did *not* expressly state that the eyelid surgery was performed to correct her Fuch's dystrophy, but rather indicated that the surgery was "eyelid surgery" that was successful. Accordingly, ALJ Zuber was not confused about the nature of the surgery. Second, the Commissioner argues in the alternative that, even if ALJ Zuber was confused as the Plaintiff claims, his confusion was at worst harmless error since the remainder of the vision tests and medical opinions of record repeatedly confirm that she retained sufficient fine visual acuity to perform her past relevant work as testified to by the vocational expert, who expressed the opinion at the hearing that an

individual with no more than frequent fine visual acuity would remain capable of performing the Plaintiff's past relevant work as a telemarketer, survey worker and broadcaster (Tr. 79-80).

The Commissioner further argues that a remand pursuant to Sentence 6 of 42 U.S.C. §405(g) is not appropriate in the present case. This conclusion reasons the Commissioner is unavoidable because the new evidence cited by the Plaintiff dates to January of 2015, 18 months after the hearing decision of the ALJ. Such remote evidence in the view of the Commissioner does nothing to undermine the accuracy of the hearing decision particularly given that the visual acuity testing results obtained in May of 2013, two months prior to ALJ Zuber's hearing decision, show a stable visual acuity of 20/25 and 20/30. (DN 12, Ex. 1). The Commissioner continues that not only is the new evidence temporally remote, it also does not create a reasonable probability that the Commissioner would have reached a different conclusion had the evidence been before the ALJ.

The new medical records, according to the Commissioner, do not contain significant objective findings. Rather, the patient record of January 2015, merely reflects the Plaintiff's subjective complaints that her visual acuity was worsening, while the objective evidence showed 20/30 and 20/50 vision, test results not dissimilar to those obtained prior to the adverse hearing decision of ALJ Zuber. Because the vocational expert testimony indicates that a claimant who was limited even to only occasional visual acuity could still perform two of the Plaintiff's prior jobs, the Commissioner concludes that the new evidence was not material and would not have created a reasonable probability that the Commissioner would have reached a different disposition of Swayzer-Bradleigh's DIB claim. (Tr. 80). Only if a claimant had no fine visual acuity did the VE testify that such an individual could not perform any of the identified past

relevant work (Tr. 81). Because none of the visual acuity tests, either before or after the hearing decision, indicated that Swayzer-Bradleigh has no fine visual acuity, the Commissioner concludes that the decision of the ALJ is supported by substantial evidence, and that a remand pursuant to Sentence 6 of 42 U.S.C. §405(g) would not be justified as it would not result in a different outcome.

Upon renewed consideration, the Court is compelled to agree with the Commissioner. A remand pursuant to Sentence 6 of 42 U.S.C. §405(g) is not appropriate in the present case. *See, Ward v. Comm'r*, 211 F.3d 652, 656 (1st Cir. 2000) (remand is not required if it would be no more than an empty exercise). A Sentence 6 remand will only be appropriate in those limited circumstances when the Plaintiff is able to establish that the evidence in question is both new and material and that good cause exists for the failure to include such evidence in the medical records presented to the ALJ. *Hollon, ex rel. Hollon v. Comm'r*, 447 F.3d 477, 483-84 (6th Cir. 2006); *Willis v. Sec'y of HHS*, 727 F.2d 551, 554 (6th Cir. 1984). Only when the Plaintiff establishes a reasonable probability that the new evidence would change the outcome of the ALJ's decision will such evidence be considered material. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Sizemore v. Sec'y HHS*, 865 F.2d 709, 711 (6th Cir. 1988).

A remand pursuant to sentence 6 will not be appropriate where the evidence establishes merely that a claimant's condition happened to worsen after the administrative proceedings were concluded. *Jones v. Comm'r*, 336 F.3d 469, 478 (6th Cir. 2003); *Sizemore,* 865 F.2d at 711-12 (post-administrative decision evidence that the claimant's condition deteriorated did not justify a remand where the evidence did not demonstrate the point in time at which the disability itself allegedly began) (citing *Oliver v. Sec'y HHS*, 804 F.2d 964, 966 (6th Cir. 1986)).

Here, ALJ Zuber rendered his adverse decision in mid-July of 2013.  Not until nearly 18 months later did Dr. Haider on Jan. 26, 2015, reflect Swayzer-Bradleigh's complaints of a decrease in her visual acuity.  Even then, Dr. Haider's treatment notes and test results show that Plaintiff continued to have 20/30 vision and 20/50 vision in her eyes, test results not significantly dissimilar to certain of the Plaintiff's pre-hearing decision test results.  (Tr. 359, 361, 367, 369, 381, 387).  Her sole complaint on that occasion appears to be that she experienced glare and halos that made her reluctant to go out after dark due to unsure footing.  Thus, nothing in the treatment note of Dr. Haider would appear to indicate that the Plaintiff has no fine visual acuity.  Accordingly, while the evidence may be new, it therefore is not material as it would not have created a reasonable probability of a different outcome if the Court had ordered a remand pursuant to sentence 6 of 42 U.S.C. §405(g).

The Court also rejects the Plaintiff's argument that ALJ Zuber at p. 6 of his hearing decision significantly misapprehended the nature of the Plaintiff's eye surgery.  To the contrary, examination of the language of the hearing decision in the case shows that the ALJ was well aware of the "eyelid surgery" and the Plaintiff's recovery therefrom.  The ALJ then continued to correctly note that the Plaintiff's vision remained 20/25 in the right eye and 20/30 in the left eye as of May of 2013 (Tr. 18, 359-82, 387, 469-74).  Thus, the record before the ALJ fully supported his determination that the Plaintiff retained the fine visual acuity sufficient to perform her past relevant work as confirmed by the testimony of vocational expert Franklin during the hearing of May 6, 2013 (Tr. 80-83).

During the hearing, VE Franklin testified that assuming that the Plaintiff was capable of no more than frequent fine visual acuity, she would remain capable of returning to her past relevant work (Tr. 79-80).  Further, only if the Plaintiff had no fine visual acuity would there be

no substantial gainful activity available for her to perform (Tr. 81).  Yet, no treating source of record ever expressed an opinion at any time that the Plaintiff lacks all fine visual acuity as a result of her Fuch's dystrophy.  For these reasons, the Magistrate Judge is compelled to conclude that the adverse decision of the Commissioner at step 4 of the sequential evaluation process is supported by substantial evidence on this issue and that a remand pursuant to sentence 6 of 42 U.S.C. §405(g) is not appropriate under the present circumstances.[5]  Accordingly, the decision of the Commissioner is **AFFIRMED** and the complaint shall be dismissed with prejudice by the entry of a separate final judgment.

Cc:     Counsel of Record

---

[5] Plaintiff limits her motion for summary judgment to the question of her visual acuity and does not raise any issue concerning her exertional limitations related to her other severe physical impairments of degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the left ankle or her post-status breast cancer surgery. Accordingly, the Court does not address these non-issues in its opinion.